**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

---

DENNIS MURPHY, Personal Representative to
the Estate of JAYDEN VALLEZ (a minor) deceased;
NANETTE ANDAZOLA, Individually, and Next of Kin,

Plaintiffs,

v. No. 1:25-cv-00354-MLG-JFR

ANGEL CHAVEZ;
BROOKFIELD PROPERTIES RETAIL, INC.; and
ALLIED UNIVERSAL, INC.,

Defendants,

and

BROOKFIELD PROPERTIES RETAIL, INC.,

Cross-Claimant,

v.

UNIVERSAL PROTECTION SERVICE L.P.
d/b/a ALLIED UNIVERSAL SECURITY SERVICES,

Cross-Claim Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFFS' MOTION FOR REMAND**

The question presented is whether the Defendants timely removed this matter after first receiving sufficient information to put them on notice of the grounds they cite in support of removal. The Court holds that although Plaintiffs joined Defendant Angel Chavez in bad faith, this case must be remanded because the notice of removal was untimely filed. In reaching this conclusion, the Court rejects the approach adopted in *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d

1225, 1248 (D.N.M. 2014) in favor of a totality-of-the-circumstances analysis. The relevant details and analysis follow.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

Jayden Vallez was sitting in a vehicle in the public parking lot of Coronado Mall in Albuquerque, New Mexico. Doc. 1-3 ¶ 4, ¶ 16. Angel Chavez and another unknown individual, each in possession of firearms, approached Vallez's vehicle and fired several rounds into it. *Id.* ¶ 17; Doc. 9 at 3. Vallez died later that same day from his injuries. Doc. 1-3 ¶¶ 19-21; Doc. 9 at 3. Chavez was arrested and taken into custody shortly thereafter. *See* Doc. 4-3 at 1.

Plaintiffs filed suit in 2023 for various tort claims arising from the killing.[1] Doc. 1 ¶ 1; Doc. 1-3 at 6-11. Each of the named defendants was properly served, except Chavez, who has never been served. Doc. 1 ¶¶ 2, 4; Doc. 4-1 at 1; Doc. 31 at 4:21-22 [hereinafter Hearing Transcript].

Notwithstanding Chavez's absence, litigation proceeded. The state district court entered a scheduling order establishing discovery deadlines and a May 27, 2025, trial date. Doc. 2-1 at 70-71, 78. During the course of the lawsuit, Plaintiffs did not depose Chavez, nor did they propound any other form of discovery on him. Hearing Transcript at 4:21-5:02. Plaintiffs also did not include Chavez in their trial witness list. Doc. 2-1 at 174-87.[2]

---

[1] Plaintiffs assert negligence, premises liability, negligent hiring, retention and training, and respondeat superior claims against Brookfield and Allied Universal, Inc. ("Allied"). Doc. 1-3 ¶¶ 36-55. Plaintiffs bring negligence per se and negligence claims against Chavez. *Id.* ¶¶ 56-71.

[2] The parties were required to supplement their fact witnesses lists pursuant to Rule 1-026(E) NMRA. Doc. 2-1 at 71. Plaintiffs did not add any other witnesses following fact witness list after the August 2, 2024, preliminary list deadline. *See* Docs. 2-1 to -4.

Following the close of discovery, and as trial neared, Brookfield Properties Retail, Inc. ("Brookfield") sought to extend the discovery deadline and continue trial. *See* Doc. 9-2 at 2. It asked for Plaintiffs' position on the request. *Id.* Plaintiffs demurred and informed Brookfield of their opposition. *Id.* at 1; *see also* Doc. 9.

Having not received Plaintiffs' consent, Defendants filed an emergency motion to vacate and reset the jury trial. Doc. 2-4 at 30. Plaintiffs responded to that filing but continued moving forward with the litigation. *See id.* at 119-22.[3] They prepared their portion of the pretrial order and provided their draft of that document to the Defendants on March 31, 2025. Doc. 1 ¶ 33; Doc. 2-1 at 74; Doc. 28-1 at 2-3. Significantly, Plaintiffs' portion of the pretrial order did not assert any claims against Chavez; it also did not list him as a witness. Doc. 1 ¶¶ 33, 59; Doc. 28-1 at 4-11.

Just under seven weeks before the pending trial date, Brookfield removed the case to federal court. Doc. 1 at 1. Though its invocation of federal jurisdiction is facially belated, Brookfield contends removal is nevertheless proper. It argues that Chavez's New Mexico state citizenship should be disregarded, and that without him, there is complete diversity of the parties. *Id.* ¶¶ 26-31; Doc. 15 at 3-7. In support of its position, Brookfield contends that (1) Plaintiffs named Chavez as a party exclusively to prevent removal, (2) Plaintiffs abandoned their claims against Chavez, and (3) Chavez was fraudulently joined as a party. Doc. 1 ¶¶ 26-31. Brookfield further asserts that it filed its notice of removal within thirty days of receiving "other paper" evincing federal jurisdiction—i.e., Plaintiffs' opposition to Brookfield's motion to vacate the existing trial date and Plaintiffs' portion of the proposed pre-trial order. *Id.* ¶ 14. Accordingly, Brookfield contends its notice of removal is timely. *Id.* ¶¶ 10, 13-14.

---

[3] Counsel failed to comply with local rules mandating that the portions of the exhibits referenced in their briefing be highlighted or otherwise identified. D.N.M.LR-Civ. 10.6.

Plaintiffs seek remand of this case.[4] Doc. 9 at 1. In support, they point out that Chavez is still a party to the case and so there is not complete diversity of parties. *Id.* at 8-9. Plaintiffs further contend that even if the Court finds that Chavez's inclusion in this litigation was a ruse to defeat diversity, the Defendants nevertheless waited too long to invoke federal jurisdiction under 28 U.S.C. § 1446(b)(3). *Id.* at 5 (citing § 1446(c)(1)); Doc. 21 at 2-4. Having carefully considered the parties' positions, the Court ultimately finds that Plaintiffs acted in "bad faith," § 1446(c)(1), by including Chavez as a party to this lawsuit but agrees that Defendants' removal is untimely.[5] Remand is therefore appropriate.

## DISCUSSION

### I. The Court declines to adopt *Aguayo*'s "but-for" approach and instead applies a totality-of-the-circumstances test to determine "bad faith" under § 1446(c)(1).

A defendant may remove a civil action from state court to federal court by filing a notice stating the grounds for removal and providing a "copy of all process, pleadings, and orders served upon such defendant or defendants in such action." § 1446(a). A plaintiff may concede the point or challenge the removing defendant's invocation of federal jurisdiction by filing a motion to remand within thirty days[6] of filing of the notice of removal. § 1447(c). "Once a motion to remand is filed, 'the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper.'" *Resendiz v. Progressive Direct Ins. Co.*, 672 F. Supp.

---

[4] The Court held a hearing regarding the Motion to Remand on December 19, 2025. *See* Docs. 28, 31.

[5] Because the Court holds that the notice of removal was untimely filed, the questions of whether Chavez was fraudulently joined and whether the claims against him had been abandoned are non-issues.

[6] Unless the motion to remand is for lack of subject matter jurisdiction—in that case, the motion may be filed any time before the federal district court's entry of final judgment. *Id.*

3d 1158, 1161 (D.N.M. 2023) (quoting *Wilds v. United Parcel Servs., Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003)). In considering the propriety of removal, the Court is mindful that federal courts possess limited jurisdiction and "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction . . . ." *Dutcher v. Matheson*, 840 F.3d 1183, 1189 (10th Cir. 2016) (internal quotation marks omitted) (quoting *Dutcher v. Matheson (Dutcher I)*, 733 F.3d 980, 984 (10th Cir. 2013)). "Further, [because] removal jurisdiction is at odds with principles of federalism and contravenes the general deference afforded to plaintiffs when picking a forum . . . removal statutes are to be narrowly construed and all doubtful cases should be resolved in favor of remand." *Resendiz*, 672 F. Supp. 3d at 1162 (citing *Klein v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 531 (S.D.N.Y. 2005); *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005) ("It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals.").

To remove a case based on diversity jurisdiction, as here, the defendant must demonstrate that (1) there is complete diversity of citizenship between all parties and (2) the amount in controversy exceeds $75,000.00. *Id.* at 1162 (citing § 1332(a). Diversity between the parties must be complete. *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68 (1996); *Radil v. Sanborn W. Camps, Inc.,* 384 F.3d 1220, 1225 (10th Cir. 2004).

Apart from these two requirements, there are also temporal limitations. Ordinarily, a defendant must remove a matter within thirty days after being served with the operative pleading. § 1446(b)(1). If, however, "the case stated by the initial pleading is not removable," § 1446(b)(3) permits removal within thirty days after the defendant receives an "amended pleading, motion, order[,] or other paper from which it may first be ascertained that the case is . . . or has become

removable." The relevant document(s) must provide "clear and unequivocal notice" of removability. *Paros Props. LLC v. Colo. Cas. Ins. Co.*, 835 F.3d 1264, 1269 (10th Cir. 2016) (internal quotation marks omitted) (quoting *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998)). Further, a case may not be removed more than one year after commencement of an action. § 1446(c)(1). An exception to this deadline exists—when "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* But, even then, the removing party must meet § 1446(b)(3)'s temporal requirement that removal occur within thirty days of ascertaining removability.

The Tenth Circuit has not adopted a specific test for assessing "bad faith" under the statute, and varying approaches have been taken by other courts. *See, e.g., Hiser v. Seay*, No. 5:14-CV-170, 2014 U.S. Dist. LEXIS 168429, at *10-11 (W.D. Ky. Dec. 4, 2014) (holding that the bad faith inquiry turns on "whether the plaintiff engaged in intentional conduct to deny the defendant the chance to remove the case to federal court."); *Manious v. R.J. Reynolds Tobacco Co.*, 720 F. Supp. 3d 952, 959-60 (D. Haw. 2024) (adopting a three-factor analysis for determining bad faith); *Dutchmaid Logistics, Inc. v. Navistar, Inc.*, 2017 U.S. Dist. LEXIS 55151, at *4 (S.D. Ohio Apr. 11, 2017), *adopted by*, 2017 U.S. Dis. LEXIS 111311 (S.D. Ohio July 18, 2017) (defining bad faith as whether "the plaintiff engaged in intentional conduct to deny the defendant the chance to remove the case to federal court.").

In this District, Judge James O. Browning adopted a two-step test to assess whether a plaintiff acted in bad faith. *Aguayo*, 59 F. Supp. 3d at 1264. That analysis includes a "but-for test of subjective intent" which examines, first, whether the plaintiff has actively litigated against the removal spoiler. *Id*. at 1273-75. Relevant considerations under that test include the amount of time the removal spoiler spent as a party to the case, the amount of discovery propounded, and the

litigation efforts made in relation to the monetary value of the case. *Id*. at 1275. If the plaintiff clears this initial hurdle, then a presumption of good faith is applied that the defendant may rebut through "direct evidence" that "he or she has on hand" but they may not obtain discovery on the question (although the defendant may proffer newly created affidavits in support of their position). *Id*. at 1275-76. Resolution of this second step, under Judge Browning's formulation, turns on "the quantity and quality of the defendant's evidence" that is tantamount to "a smoking gun or close to it." *Id*. at 1276-77.

This Court declines to follow the *Aguayo* approach.[7] There are a few reasons why.

First, *Aguayo*'s focus on active litigation incentivizes the crafty plaintiff to litigate against the removal-spoiling-defendant even if they never genuinely intend to pursue judgment against them. Indeed, Judge Browning recognized this point noting that a "plaintiff can actively litigate against a removal spoiler even though the plaintiff is only keeping the spoiler in the case for the forum manipulation purposes" and may "be able to defeat removal under the exception by jumping through the hoops of actively litigating the action in state court." *Id.* at 1274. The result is expanded discovery and the inclusion of unnecessary parties, all of which may feed the maw of civil litigation.

Second, the operative statutory language asks the Court to make a finding that "the plaintiff has acted in bad faith" specifically "to prevent a defendant from removing the action." § 1446(c)(1). While the failure to actively litigate against a defendant may be a consideration material to that inquiry, it is not dispositive. There are many valid reasons why a plaintiff may include a defendant in the litigation even though they are not actively litigating against them:

[7] The *Manious* and *Dutchmaid* decisions each considered and rejected the *Aguayo* approach. *See Manious*, 720 F. Supp. at 960; *Dutchmaid*, 2017 U.S. Dist. LEXIS 55151, at *9, *adopted by*, 2017 U.S. Dis. LEXIS 111311.

relevant discovery may be possessed by a third party, common proof used in support of claims against other defendants, comparative fault concerns, claim preservation, insolvency, or simply because litigation is unnecessary as evidence is already in the plaintiff's possession. Regardless, while active litigation may be a relevant factor to the "bad faith" inquiry, many other considerations may also be material.

Third, no appellate court—including the Tenth Circuit—has ever adopted the *Aguayo* framework. Although circuit courts have expressly considered bad faith in the context of § 1446(c)(1), they have employed other modes of analysis. *See, e.g., Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 293 (5th Cir. 2019) (affirming the district court and holding that the only relevant question is whether "plaintiff's litigation conduct meant 'to prevent a defendant from removing the action.'" (quoting § 1446(c)(1)); *Hajdasz v. Magic Burgers, LLC*, 805 F. App'x 884, 889-90 (11th Cir. 2020) (recognizing that bad faith under § 1446(c)(1) requires deliberate conduct intended to prevent removal, and emphasizing the removing defendant's diligence in determining whether the bad-faith exception applies).

Given these observations, the Court finds that the better means for assessing bad faith is through consideration of the totality of the circumstances. Material factors include: the legal and factual viability of the claims against the nondiverse defendant; whether and when the plaintiff served that defendant; the extent to which the plaintiff pursued discovery from or concerning that defendant; whether the plaintiff sought relief against that defendant; whether the defendant was included in witness lists, pretrial orders, or other filings identifying the claims and parties to be pursued at trial; the timing of the plaintiff's litigation conduct in relation to the one-year removal deadline; any explanation the plaintiff offers for its treatment of the nondiverse defendant; and any other circumstances bearing on the plaintiff's purpose. These considerations are neither exclusive

nor individually controlling. Rather, they collectively serve to reach a result consistent with the ultimate aim Congress prescribed: whether the plaintiff acted in bad faith for the purpose of preventing removal.

## II. The totality of the circumstances demonstrates that Plaintiffs acted in bad faith to prevent removal.

With this analysis in mind, the Court turns to the instant facts. Although Plaintiffs have asserted a cognizable claim against Chavez, they have not served him or sought a default judgment against him. Further, Plaintiffs have not propounded any discovery on Chavez; they have not taken his deposition. Even if the Plaintiffs could somehow pursue their claims against Chavez at trial, he was not identified on any witness list and not included in the proposed pretrial order. *See* Doc. 2-1 at 174-87; Doc. 15 at 4. As it stands now, Plaintiffs have not litigated their claims against Chavez, and they have not demonstrated any intent to seek judgment against him at trial. Hearing Transcript at 4:21-5:14. There is no reason to believe Plaintiffs will be asking the jury to make any findings against Chavez.

Plaintiffs provide no explanation for their inaction, nor do they offer a cogent statement regarding Chavez's inclusion in this lawsuit. *See generally* Doc. 9; Doc. 21, Hearing Transcript at 4:21-5:14. Those omissions are unexplained.

Given these facts, and after assessing the totality of the circumstances, the Court finds that Plaintiffs included Chavez as a party in order to prevent removal and therefore acted in bad faith as contemplated by §1446(c).[8] Significantly, the Court does not find bad faith merely because Plaintiffs failed to actively litigate against Chavez. Rather, it is the combination of Plaintiffs' prolonged inactivity, the advanced stage of the proceedings, their affirmative omission of Chavez

---

[8] The Court's finding of bad faith renders § 1446(c)'s one-year bar on removing otherwise § 1446(b)(3)–eligible cases inapplicable.

from materials identifying the claims and witnesses to be presented at trial, and their failure to articulate any legitimate litigation purpose for continuing to maintain him as a defendant.

**III. Defendants did not timely remove the action under § 1446(b)(3).**

The Court's finding of bad faith does not resolve the question. Defendants must still comply with § 1446(b)(3), which requires removal within thirty days after receipt of "an amended pleading, motion, order[,] or other paper" from which it may first be ascertained that the case is one which "is or has become removable." Thus, the question of when Defendants first received notice that the case was removable must be determined.[9]

Plaintiffs filed their preliminary fact witness list on August 2, 2024. Doc. 2-1 at 174-87. Chavez was not identified as a witness, and Plaintiffs did not supplement their witness list at any point thereafter. *Cf. id.* at 71 (requiring the parties to supplement their preliminary fact witness lists in accordance with the provisions of Rule 1-026(E) NMRA. When discovery closed in February 2025, Chavez had still not been served; he had not been deposed; Plaintiffs had not propounded any discovery on him. Doc. 31 at 4:21-5:02.

On March 7, 2025, Defendants reached out to Plaintiffs asking to continue the trial setting. Doc. 9-2 at 2. Plaintiffs immediately responded noting their opposition. *Id.* at 1. By then, Plaintiffs had filed a witness list that omitted Chavez, discovery had closed without any effort to pursue claims against him. Hearing Transcript at 5:03-05. These circumstances, reflected in Plaintiffs' filings and correspondence, provided clear and unequivocal notice that Plaintiffs did not intend to pursue judgment against Chavez. The Court finds that Defendants knew by March 7, 2025, that

[9] For purposes of this Opinion, the Court is assuming Defendants are correct that Chavez's citizenship status should be disregarded.

the case was removable and that Defendants failed to timely remove the case within thirty days thereafter. *See* Doc. 1 (filed April 11, 2025); § 1446(b)(3). Remand is therefore required.

**IV. The Court declines to issue attorney's fees or costs pursuant to § 1447(c).**

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Defendants did not timely remove the case, but Plaintiffs are not without fault. Given the Court's finding that Plaintiffs acted in bad faith to prevent removal, the Court will not award fees or costs.

**CONCLUSION**

In sum, even though Plaintiffs acted in bad faith to prevent removal, the Court finds the notice of removal was not timely filed. Accordingly, Plaintiffs' Motion to Remand is granted. The Court hereby remands the case to the First Judicial District, County of Santa Fe, State of New Mexico.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA